**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

UNITED STATE DEPARTMENT OF
AGRICULTURE,

    **Plaintiff,**

**v.**

                        **Case No. 1:25-cv-00194-SDN**

**GLEN H. CAMERON**

    **Defendant**

**DEFENDANT'S FIRST AMENDED MOTION FOR SANCTIONS PURSUANT TO M.R. CIV. P. 93 AND 14 M.R.S. § 6321-A(12)**

**I.     INTRODUCTION**

Defendant Glen Cameron ("Mr. Cameron") respectfully moves for the imposition of sanctions against Plaintiff, the United States Department of Agriculture ("USDA") for its failure to negotiate in good faith regarding the modification of Mr. Cameron's mortgage loan ("the Loan") in the Maine Foreclosure Diversion Program ("FDP") as required by 14 M.R.S. § 6321-A(12) and M.R. Civ. P. 93(j) and (h)(1)(D).

**II.    FACTUAL AND PROCEDURAL BACKGROUND**

1. After Plaintiff commenced this case, Mr. Cameron, acting *pro se*, timely answered the Complaint by filing the Response to Complaint and Request for Mediation form provided under D. Me. Local R. 4(b). (ECF No. 6).

2. Plaintiff filed no objection to Mr. Cameron's request for mediation.

3. On June 3, 2025, the Court referred this case to the Caribou, Maine District Court for Foreclosure Diversion Program ("FDP mediation"). (ECF No. 8).

1

4.  The Parties participated in a total of four mediation sessions in this case. (*See* Declaration of Glen Cameron, attached hereto as Ex. 1, ¶ 6).

5.  During the July 21, 2025 Mediation ("First Mediation"), which Mr. Cameron attended *pro se* with the assistance with a HUD-Certified Housing Counselor, USDA offered to bring the Loan current through "reamortization" of the loan if Mr. Cameron made a one-time downpayment of $11,500 to USDA. (Ex. 1 ¶¶ 7, 9 – 10). Under this option, USDA would add together outstanding principal balance, past-due interest, property charges that USDA had advanced and fees into a new Loan balance which would be repaid by Mr. Cameron in equal monthly installments of principal and interest over the remaining Loan term. (Ex. 1 ¶ 9).

6.  USDA stated it would provide the final terms of the reamortization only after Mr. Cameron paid the $11,500 downpayment. (Ex. 1 ¶ 10).

7.  Soon after the First Mediation, Mr. Cameron retained undersigned counsel. (Ex. 1 ¶ 11; ECF No. 11).

8.  On August 14, 2025, Mr. Cameron mailed a check to USDA for $11,500. (Ex. 1 ¶ 12).

9.  At the Parties' second mediation held on October 27, 2025 ("Second Mediation"), USDA acknowledged receipt of Mr. Cameron's $11,500 check but stated it was unable to provide the final reamortization terms because of the federal government shut down in effect at that time. (Ex. 1 ¶¶ 15-16).

10. USDA agreed it would send Mr. Cameron the final reamortization terms as soon as possible after the federal government reopened (Ex. 1 ¶ 16).

11. The Parties agreed to attend a third mediation in late January 2026 to allow time for USDA to process the final reamortization and enable further discussion if Mr. Cameron did not agree to its terms. (Ex. 1 ¶ 17).

2

12. The federal government reopened on November 12, 2025.[1]

13. On or around November 28, 2025, Mr. Cameron received a document in the mail titled "Reamortization Agreement" with an "effective date" of November 8, 2025, which stated in part:

> The current outstanding balance includes unpaid principal, accrued unpaid interest, unpaid advances and fees. The total outstanding balance is $ 71318.17.
>
> In consideration of the reamortization of the note or assumption agreement and the promises contained in this agreement, the outstanding balance is capitalized and is now principal to be repaid at 6.00000% per annum at $ 764.28 per month beginning December 08, 2025 and on the 8th day of each succeeding month until the principal and interest are paid, except that the final installment of the entire debt, if not paid sooner, will be due and payable on May 8, 2036.

(Ex. 1 ¶ 18; Ex. A at 1).

14. In addition to the monthly payment of $764.28 for principal plus interest, the Reamortization Agreement stated that Mr. Cameron would be responsible for a monthly escrow payment to cover property charges such as real estate taxes and homeowner's insurance. (Ex. A at 1-2).

15. The Reamortization Agreement was accompanied by a letter from USDA dated November 18, 2025 ("the Offer Letter") which informed Mr. Cameron that his starting escrow payment would be $147.31 per month, bringing his total monthly mortgage payment to $911.59 starting December 8, 2025. (Ex. 1 ¶ 19; Ex. B).

16. The Offer Letter instructed Mr. Cameron to sign and return the Reamortization Agreement within 10 days of his receipt of it. (Ex. 1 ¶ 19, Ex. B).

17. Mr. Cameron signed the Reamortization Agreement on December 1, 2025, and returned it to USDA by email and mail on December 2, 2025. (Ex. 1 ¶¶ 21, 24; Ex. 2 ¶ 7; Ex. C at 5-6).

---

[1] The court may take judicial notice of this fact under Fed. R. Evid. 201(b)(1)-(2).

18. With the signed Reamortization Agreement, Mr. Cameron mailed USDA a check for the mortgage payment of $911.59 that was due December 8, 2025. (Ex. 1 ¶¶ 23-24).

19. On December 2, 2025, USDA confirmed receipt of the emailed copy of the signed Reamortization Agreement, stating "Mr. Cameron's account was reamortized" and asked for consent to dismiss the foreclosure case. (Ex 2 ¶ 7; Ex. C at 5).

20. In response to USDA's request to dismiss the case, Mr. Cameron, through counsel, asked to hold the case in mediation until Mr. Cameron received a monthly billing statement showing that the Loan was brought current. (Ex. C at 5-6). USDA, through its counsel, agreed that the "proposal of deferring dismissal until [Defendant's counsel] is sure that the loan is current is fine." (Ex. C at 3).

21. On December 24, 2025, USDA sent Mr. Cameron a monthly billing statement showing that he owed $10,006.84 as of January 8, 2026, which included Mr. Cameron's regular monthly payment of $911.59 plus $9,095.25 in fees. (Ex. 1 ¶ 25 & Ex. D).

22. Prior to receiving the December 24, 2025 billing statement, Mr. Cameron does not recall any time that USDA told him about additional fees that could be added to the Loan after reamortization. (Ex. 1 ¶ 43).

23. After Mr. Cameron inquired about the fees, USDA's employee, Michelle Tanner, provided the following explanation in an email dated January 12, 2026:

> The account was reamortized before all foreclosure fees were billed and paid. I have seen this on a couple of these accounts. For future reference, anytime an account is going to be reamortized, we need to wait for the reamortization until we know that the foreclosure fees were billed and paid.

(Ex. 2 at ¶ 7; Ex. C at 1).

24. At mediation held on January 26, 2026, ("Third Mediation"), Mr. Cameron, through counsel, asked USDA to agree to waive the fees because they were not included in the

4

Reamortization Agreement. (Ex. 1 ¶¶ 30-31). The Parties agreed to hold a fourth mediation session to allow time for USDA to consider Mr. Cameron's request. (Ex. 1 ¶ 31). USDA further agreed at the Third Mediation to provide Mr. Cameron with a breakdown of amounts included in the $9,095.25 fee. (Ex. 1 ¶ 32).

25. On February 28, 2026, Ms. Tanner sent Mr. Cameron a document which she described as "the breakdown of fees that were charged to Mr. Cameron's loan, after Reamortization was completed" (hereinafter "Fee Breakdown"). (Ex. 2 ¶ 9; Ex. E at 5; Ex. F).

26. According to the Fee Breakdown, the total fees charged post-reamortization had grown to $10,181.40. (Ex. F).

27. The Fee Breakdown included a $9,050 fee called "FCL Over & Above Services (T&M)" with a "completed date" of September 25, 2025. (Ex. F).

28. The Fee Breakdown contains no further description or itemization of the $9,050 fee; an additional $1,131.40 in fees is itemized into several monthly charges of $26.57 for occupancy inspections completed between 2023 and August 2025, along with a $600.00 charge for an appraisal completed in August of 2025. (Ex. F).

29. Defendant asked Ms. Tanner to provide further information about the $9,050 fee. In a response dated March 12, 2026, Ms. Tanner forwarded an explanation she had received from someone else about the fees:

> We have a contract with our Vendor who is responsible to complete our foreclosures. We are billed based on the "phase" of the foreclosure. Based on our Contractual Agreement with the Vendor, we were billed 70 percent of the completion of the foreclosure. If a foreclosure is completed, then we would pay 100 percent of the contractual amount agreed upon. $650.00 of the $9,050.00 is the start up fee for the foreclosure action and sending the file to the Vendor.
>
> 70% includes:
> Proof that Title was ordered
> Copy of Title

5

> Copy of Lis Pendens and/or complaint filed
> Proof of scheduled actions (mediations, court appearance, ect [sic]) as a response to the complaint
> Proof of completed action from the complaint

(Ex. 2 ¶ 9; Ex. E at 1).

30. To date, USDA has provided no further explanation of the work that the vendor performed in this case and has not provided a copy of the vendor contract that Ms. Tanner referenced after Mr. Cameron requested it. (Ex. 2 ¶ 12).

31. The Parties attended a fourth and final mediation on March 16, 2026 ("Fourth Mediation"), at which Ms. Tanner was the sole USDA representative. During the Fourth Mediation, Ms. Tanner stated that USDA would not waive any of the fees, that this decision had been made by someone at USDA prior to the Fourth Mediation, and that Ms. Tanner did not have the authority to negotiate the amount of the fees. (Ex. 1 ¶¶ 33-34).

32. Because Mr. Cameron's employer does not allow him to work partial days, he had to miss a 12-hour day of work to attend the Fourth Mediation, costing him $274.80 in gross wages. (Ex. 1 ¶ 35).

33. Soon after the Fourth Mediation, Mr. Cameron received two letters from USDA in the mail. The first, dated March 9, 2026, stated "**NOTICE: 60 DAYS PAST DUE**" at the top, and that "the total amount due at once" was $11,907.83. (Ex. 1 ¶ 36; Ex. G). (Emphasis in original). The second letter, dated March 10, 2026, stated "**FINAL NOTICE BEFORE FORECLOSURE REVIEW**" and instructed Mr. Cameron to "[s]end the total amount due at once: $10,083.83". (Ex. 1 ¶ 37; Ex. H). (Emphasis in original).

34. Both the March 9 and March 10, 2026 letters from USDA contained the following statement: "If you do not make your payment or contact us, you may lose your home." (Exs. G, H) (Emphasis in original).

6

35. Between December 2025 and March 2026, Mr. Cameron continued paying the regular principal, interest, and escrow payment of $911.59 per month (Ex. 1 ¶ 41).

36. On March 24, 2026, USDA sent Mr. Cameron his monthly billing statement showing that a fee of $133.83 was being added to his regular monthly payment, bringing the total payment due April 8, 2026 to $1,062.09. (Ex. 1 ¶ 38; Ex. I).

37. The March 24, 2026 statement separately showed a "fee balance" of $9,676.57. (Ex. I).

38. Mr. Cameron did not receive notice of the $133.83 monthly fee installment prior to receiving the March 2026 monthly billing statement. (Ex. 1 ¶ 40).

39. Mr. Cameron paid the additional $133.83 fee with his April 2026 Mortgage payment because he did not want to incur further late fees. (Ex. 1 ¶ 41).

### III.    MEMORANDUM OF LAW

### A.  THE COURT SHOULD IMPOSE SANCTIONS UNDER 14 M.R.S. § 6321-A(12) AND M.R. CIV. P. 93 BECAUSE PLAINTIFF FAILED TO MEDIATE IN GOOD FAITH WHEN IT BREACHED THE PARTIES' FINAL REAMORTIZATION AGREEMENT.

When a foreclosure action involving Maine real property is before the federal court, "[t]he Maine statutes and the Law Court's decisions establish the substance of state law" for the federal court to apply. *See Residential Mortgage Loan Trust 2013-TT2 v. Lloyd*, 183 F.Supp.3d 189, 195 (D. Me. 2016). This principle applies to the duty to negotiate in good faith during FDP mediations under 14 M.R.S. § 6321-A(12) and M.R. Civ. P. 93(j), along with the body of Law Court decisions interpreting that duty. *Id.*

The parties to foreclosure mediation must "make a good faith effort to mediate all issues." 14 M.R.S. § 6321-A(12). The court "may impose appropriate sanctions" if the Parties fail to participate in good faith. M.R. Civ. P. 93(j). "The court is not required to find evidence of bad faith; rather, it is required to find only a lack of good faith." *U.S. Bank v. Sawyer*, 2014 ME 81, ¶

7

17, 95 A.3d 608, 612. The Law Court has repeatedly upheld dismissal with prejudice as an appropriate sanction under Rule 93(j), determining that in certain situations, a sanction which effectively renders the note and mortgage unenforceable is not unduly harsh. *See, e.g., Sawyer*, 2014 ME at ¶ 17; *Bayview Loan Servicing, LLC v. Bartlett*, 2014 ME 37, ¶ 17, 87 A.3d 741, 747. As the Law Court noted in *U.S. Bank v. Sawyer*, "[i]f banks and mortgage servicers intend to do business in Maine and use our courts to foreclose on delinquent borrowers, they must respect and follow our rules and procedures, including M.R. Civ. P. 93(j). Failure to do so may… expose a litigant to significant sanctions…." 2014 ME at ¶ 17, 95 A.3d at 612. Although Mr. Cameron does not seek dismissal with prejudice as a sanction here, these holdings demonstrate the strong emphasis that the Law Court places on good faith negotiations in Maine's FDP.

A party's failure to honor a legally binding agreement to modify the terms of the mortgage loan is sanctionable conduct under § 6321-A(12) and M.R. Civ. P. 93(j). *See First Franklin Financial Corp. v. Gardner*, 2013 ME 3, ¶¶ 6-7, 60 A.3d 1262, 1263 (finding that lender's failure to honor the terms of a loan modification agreed to in mediation constituted a violation of its duty to mediate in good faith). A loan modification agreement is legally binding if it is "sufficiently specific and definite to constitute a binding commitment for a loan modification to be offered…" *Id.* at ¶ 6, 60 A.3d at 1263 (internal citations removed)).

Over the First and Second Mediations, the Parties agreed to a straightforward resolution to this case: if Mr. Cameron paid $11,500 to USDA, USDA would agree to modify ("reamortize") the Loan with final terms to be provided to Mr. Cameron after he tendered this sum. After it had received the $11,500, USDA sent Mr. Cameron the Reamortization Agreement, which contained clear and definite terms: that the total outstanding balance is $71,318.17, which is the sum of "unpaid principal, accrued unpaid interest, unpaid advances and fees", repaid in installments fixed

8

at $764.28 for the remaining loan term. (Ex. A). USDA's agreement in the Second Mediation, that it would send Mr. Cameron the final reamortization terms as soon as possible after the government shutdown, reasonably led Mr. Cameron to believe that the Reamortization Agreement contained the *final* amounts to be reamortized. There is no ambiguity about Mr. Cameron's acceptance of this contract: Mr. Cameron timely executed and returned the Reamortization Agreement with his first payment due as instructed, and USDA acknowledged his acceptance by declaring that the loan had been reamortized. (Ex. 1 ¶¶ 21-24; Ex. C at 5). At the time that the reamortization was completed, both Parties appeared to believe that the default was fully resolved. (*See* Ex. C at 3-5). USDA's imposition of additional foreclosure fees, the existence of which USDA never disclosed to Mr. Cameron until after reamortization, constitutes clear breach of the Reamortization Agreement and a violation of USDA's duty to mediate in good faith.

### B.  THE FEES ARE INSUFFICIENTLY EXPLAINED AND UNREASONABLE.

Even if the Reamortization Agreement allowed USDA to charge the fees, the Promissory Note limits fees that USDA may charge to "costs and expenses in enforcing this promissory note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees." (ECF No. 1 Att. 1-1 at 2). USDA provided almost no information about what actual costs and expenses its vendor incurred, whether the fees include USDA's attorney's fees, and if those fees are reasonable. USDA's Fee Breakdown gave no detail on the $9,050 foreclosure-related fee, other than its "completed date" of September 2025, which precedes three of the four mediations held in this case *and* USDA's preparation of the final Reamortization Agreement. (Ex. F). This suggests only that these activities were *not* included in the $9,050 fee, even though the fee represents 70% of the vendor's maximum foreclosure fee. (Ex. E at 1). USDA's failure to explain or justify a fee which is facially unreasonable constitutes a second failure to mediate in good faith.

9

### C. USDA FAILED TO NEGOTIATE IN GOOD FAITH WHEN IT BROUGHT NO ONE TO MEDIATION WITH AUTHORITY TO NEGOTIATE OVER THE FEES.

Participation in FDP mediation is mandatory for Plaintiff or its representative who has authority to agree to a proposed settlement. M.R. Civ. 93(h)(1)(D). Although the Parties agreed to hold the Fourth Mediation for the sole purpose of allowing USDA to consider Mr. Cameron's request to waive the fees, USDA acknowledged that no one was present at Fourth Mediation with authority to negotiate the amount of fees; USDA waited until the Fourth Mediation to inform Mr. Cameron that it had already made a final decision to charge all outstanding fees to the Loan. USDA's violation of the mandatory attendance requirement in Rule 93(h)(1)(D) resulted in a mediation session that served no useful purpose, wasting both Mr. Cameron's and his attorney's time while also costing Mr. Cameron a full day of lost wages.

### IV.    CONCLUSION

For the forgoing reasons, Mr. Cameron respectfully requests that the Court impose appropriate sanctions for USDA's failure to mediate in good faith in accordance with 14 M.R.S. § 6321-A and M.R. Civ. P. 93(j) & (h), including: (1) ordering the removal of all foreclosure-related fees and costs which were not included within the capitalized balance in the Reamortization Agreement; (2) ordering that, other than any amounts included in the new principal balance stated in the Reamortization Agreement, USDA must bear all of its own attorney's fees and other costs associated with this foreclosure case; (3) ordering that USDA pay Mr. Cameron's expenses incurred by attending the Fourth Mediation, including lost wages of $274.80 and reasonable attorney's fees; (4) ordering USDA to pay Mr. Cameron's reasonable attorney's fees and costs incurred in preparing this Motion; and (5) any other relief that this Court deems appropriate.

10

Respectfully submitted,

DATED: 06/16/2026

/s/ Emma Halas-O'Connor
Emma Halas-O'Connor
*Attorney for Defendant*
Pine Tree Legal Assistance
P.O. Box 547
Portland, ME 04112
(207) 400-3226
ehalasoconnor@ptla.org

11